**UNITED STATES v. STEPHAN.**

No. 26619.

District Court, E. D. Michigan, S. D.

June 5, 1943.

See, also, 50 F.Supp. 448.

John C. Lehr, U. S. Atty., and John W. Babcock, Asst. U. S. Atty., both of Detroit, Mich., for plaintiff.

Nicholas Salowich, of Detroit, Mich., and James McCabe, of Nashville, Tenn., for defendant.

TUTTLE, District Judge.

This cause comes before the court pursuant to the following order entered June 1, 1943, directing production of the defendant in court for fixing date for executing judgment and sentence:

"The order issued by the Supreme Court of the United States of America on the 14th day of April, 1943, staying the execution of the judgment and sentence in the above-entitled cause having been vacated by said Supreme Court on the 1st day of June, 1943, and

"There being no longer any reason why the judgment and sentence passed by this court on the 6th day of August, 1942, should not now be executed, and the date of November 13, 1942, fixed for such execution in the judgment and sentence imposed by this court on August 6, 1942, having now expired and the later date of April 27, 1943, fixed for executing said judgment and sentence in the order of this court entered on the 12th day of April, 1943, having also now expired, and

"It being the duty of this court to fix a new date for the execution of such judgment and sentence,

"It is hereby Ordered that the United States Marshal produce said defendant Max Stephan in the District Court Room of said Court in the City of Detroit, in said District, at 10:00 o'clock in the forenoon of the 5th day of June, 1943, for the purpose of fixing a date by this court for the execution of said judgment and sentence which was heretofore imposed by this court on the 6th day of August, 1942, and for no other purpose, and

"It is further Ordered that the clerk mail a copy of this order to the United States Marshal, the United States Attorney, and Counsel for the Defendant."

Just about a year ago now (June 17, 1942) 23 grand jurors sworn to do their duty without fear or favor listened to the evidence in this case and were unanimous, in returning the indictment against this defendant charging him with treason.

 Eleven months ago (June 29, 1942) twelve honest, intelligent, conscientious traverse jurors were impaneled in this court and sworn to return a true verdict according to the facts proved by the witnesses and the law stated to them by the court. They listened carefully to the testimony, the arguments of able lawyers, and the charge of the court.[1] Each one of the twelve jurors being satisfied beyond all reasonable doubt that the defendant was guilty had the courage to

---

[1] For the purpose of indicating the Court's interpretation of the constitutional and statutory provisions relating to treason, a condensation of the portion of the Court's charge to the jury on that subject is given as follows, with the usual instructions relative to burden of proof, duties of the jury, etc., omitted:

Treason is the only offense that the Constitution of the United States mentions. We, of course, have many things that are offenses against the United States, but they are all creatures of the Congress of the United States, enacted through the authority to pass laws derived by Congress from the Constitution. From a reading of the Constitution, it is apparent that our forefathers mentioned treason specifically because they were anxious to limit things. They wanted to fix it so Congress could not go too far. Our forefathers had all lived under governments in which the law had been oppressive to them. That is why they were making the United States, because they wanted to get free from oppressive governments and have a democracy, a government under which they could enjoy what they believed to be true liberty and have true opportunity, so they limited the things that Congress could do. When they referred to treason, which is the only offense they referred to, they were thinking about fixing it so that Congress couldn't make any old thing treason. They recognized treason as a crime striking at the very existence of government, as a thing that would ruin government if it existed; and they wanted to have a law against treason, but at the same time they didn't want Congress to be able to make anything treason except the one thing they had in mind.

It is interesting to note that the language is such that our forefathers, when they were making the Constitution, thought of the United States of America as plural, as many instead of one. Most of us, I think, when we say "United States of America" today think of the singular. We would say "The United States is" and not "The United States are". I am sure I would, anyway. I think of the United States of America as a unit, my country, Uncle Sam. However, the framers of the Constitution thought of it as many states when they were making it, and that is apparent in the Constitutional definition of treason. The exact words of the Constitution, art. 3, § 3, cl. 1, are as follows:

"Treason against the United States, shall consist only in levying War against them, or in adhering to their Enemies, giving them Aid and Comfort."

Our forefathers did not want Congress to be able to take spitting in somebody's face, or anything of that kind, as being treason, so they tell the Congress itself what it is. They didn't name the penalty for it, but left that for Congress to do.

Now, I will read it again, and then I will read the next sentence which shows another safeguard and shows a tendency of the framers of the Constitution to protect the people of the United States against their own Congress, to be frank about it. They had lived under laws which were oppressive to them. They said, "We are going to create the United States of America, and we will fix it so that our own law-making body cannot make too heavy a burden for us to carry".

"Treason against the United States, shall consist only in levying War against them, or in adhering to their Enemies,

return a verdict (July 2, 1942) finding the defendant guilty of the treason with which he had been charged by the grand jury. This court carefully defined for the jury what it was necessary for them to find as a fact beyond a reasonable doubt in order to convict the defendant of treason. It has to do only with war and no person can commit the crime unless he owes allegiance to our country. The defendant was a citizen and owed his allegiance to this country. In times of peace it is treason for one

giving them Aid and Comfort. No Person shall be convicted of Treason unless on the Testimony of two Witnesses to the same overt Act, or on Confession in open Court."

The framers of the Constitution recognized that if a man were charged with a crime and came into court and admitted it and pleaded guilty to it that ought to be sufficient. If he didn't, then they require that there must be at least one overt act and at least two witnesses to the commission of the overt act. They wrote only those two sentences on treason, and left the penalty for it to Congress. Congress, in Section 1, of the Criminal Code, 18 U.S.C.A. § 1, under its duty in the enactment of laws, almost repeated the language in the Constitution. Of course, Congress could not change the requirements of the Constitution, and it did not attempt to do so.

The statute adopted by Congress reads as follows: "Treason. Whoever, owing allegiance to the United States, levies war against them or adheres to their enemies, giving them aid and comfort within the United States or elsewhere, is guilty of treason."

One point is interesting to note right there. We generally do not have jurisdiction of other crimes unless they are committed in the United States, but when it came to define treason Congress recognized that, if anyone did commit treason, it would be such a menace to the very existence of our government that it provided that even though the act were done outside the United States it would be an offense here.

As to most of those things that I have called to your attention, we have no problem here, but I call them to your attention very largely as a matter of interest and for the purpose of understanding the background. If we understand the background, we can better understand the particular part of the picture at which we are looking.

While the statute speaks of the United States in the plural, it doesn't matter whether we refer to it in the indictment or think about it in the singular or plural. It is this good old United States of America that we sometimes typify by the name Uncle Sam that is referred to, whether you call it "it", "him", or "them", or whatever pronoun you use.

A person who is against the United States of America and is a citizen of the United States is not adhering to the United States, within the meaning of the Constitution and the statute that follows the Constitution. It is difficult to make this definite and plain, and I sometimes think that jurors understand better the meaning and context of such language if the judge doesn't try to go into too much detail about it. With respect to the phrase, "adhering to their Enemies", it should be remembered that for one to be a citizen of the United States, either he has been born here and therefore owes allegiance to the United States because it is the country of his birth, or he has been born in some other country and has come here and become naturalized. The usual procedure is for the applicant for citizenship to make his declaration of intention, as the proof tends to show the defendant Max Stephan did; and then on petition later, after being here at least two years more, a hearing is held, and, if the court thinks the applicant is entitled to be admitted, he takes the oath of allegiance to this country and renounces all other countries, including the country of which he was previously a citizen.

Illustrations are likely to mislead, but in trying to find something which will help you to understand the meaning of "adhering" in the phrase "adhering to their Enemies", I have in mind the marriage ceremony where we hear the minister say, "Forsaking all others and to her cling", or something like that. Marriage involves the idea of loyalty to the husband or the wife. It doesn't mean hatred of one's own relatives, but it does mean loyalty to the spouse.

In the matter of citizenship, the new citizen renounces all other countries, and particularly the country of which he has previously been a citizen, and he declares allegiance to the United States of America. Now, that creates a loyalty, which is the same loyalty or duty as that owed to the United States of America by a person who acquires his citizenship by being born here. We do not have different classes of citizens like we do stock in companies. You will find that in corporations we sometimes have common stock, preferred stock, second preferred stock, and other kinds of stock. We have just one kind of stock in the United States of America, and

of our citizens to incite war against us. In times of war it is treason for a citizen to intentionally help our enemy. No one can be convicted of treason unless he intentionally does something to help the enemy win the war. That fact must be proved by at least two witnesses. All of this was fully explained to the jury by this court. They were told over and over again by this court that defendant would not be guilty if his purpose was simply to help Lieutenant Krug as an individual, or

that is citizenship. So far as the rights and privileges that go with citizenship are concerned, every single one of those is just alike, whether you are born here or whether you are naturalized here and no matter what country you have renounced; all are citizens and all owe the same allegiance and the same duty to the United States of America.

So, we have an allegiance—duty, responsibility, or loyalty—which every citizen of the United States owes to the United States. We do not want to get confused or misled about that. This isn't any mythical thing. We have many examples of that. Here, we have our corporation and we have our stockholders and officers. But the corporation, while it is a creature of the law, has existence in law, and we can think of the corporation as an entity apart from its members, just as we think of our municipal corporations, our cities. In the same way, we can think of our country, the United States of America; and while it is made up of our citizens, it is something different from the individual citizens who compose it, just like the corporation is an entity created by laws, which is something different from the individual stockholders who go to make it up.

Now, that idea of duty or loyalty to the country is as good a definition as I can give you of adherence to it. You and I and all other citizens of the United States, if we give to our Government the loyalty that we owe, adhere to it.

To constitute treason, it is necessary not only that one fail to give that loyalty he owes to the United States of America and instead of adhering to the United States adhere to another country, but it is also necessary that it be done in time of war, because that other country must be an enemy country. Treason has to do with war, and may be committed by levying war or starting war as well as adhering to the enemies of the country after a war has been started. We are not concerned with the former kind of treason, however, because it is not claimed that Max Stephan has started a war or levied war in any way. The other branch of treason—the one that I have been talking to you about, that is, "adhering to their Enemies, giving them Aid and Comfort", is involved in this case.

Now, as to the charge in this indictment, I will read it all to you. It is charged that Max Stephan was a citizen of the United States. If he was, he owed allegiance to the United States, and it was his duty to adhere to it. The charge is that on the 18th and 19th of last April, instead of adhering to the United States, he adhered to Germany.

The first question will be, was he a citizen of the United States? If so, then he would owe allegiance to it.

The second question will be, on the 18th and 19th of April, 1942, were we at war with Germany?

The next, at that time did he adhere to the government of Germany instead of to the government of the United States?

And, then, next, by adhering to Germany instead of to the United States of America, did he give aid and comfort to that alien enemy, namely, the country of Germany? And did he intend to do it?

If he did all those things and you are satified beyond a reasonable doubt that he did all those things, then he is guilty. But, if you do not find each and every one of those things beyond a reasonable doubt from the evidence, then he would not be guilty.

Even more than that is necessary, too, because you will remember the Constitution says that no person shall be convicted of this crime of treason, unless at least one overt act is proved by two witnesses. The jury cannot convict unless there are at least two witnesses to an overt act; and there must be at least one overt act charged and proved. An overt act means something more than what is in the mind. We get the problem of an overt act in connection with a number of different crimes. For instance, it isn't right for two men to get their heads together to rob this post office to-night, but, so far as the federal law is concerned, not a single thing could be done about it because there has been no overt act; but just as soon as one or more of them did a single thing looking towards the accomplishing of that, like going and getting a revolver, a flash light, a jimmy, or some dynamite, an overt act has been done, and the conspiracy can be punished. I mention that so that you will know what I mean by an overt act. The overt act is the doing

if he did it through friendship or through sympathy for Krug. They were told emphatically and plainly that the defendant should be acquitted unless they were satisfied beyond a reasonable doubt from the evidence that the defendant purposely and intentionally assisted Lieutenant Krug to escape for the purpose of helping Germany to win the war against the United States. If this court had not stated the law correctly the appellate courts would have reversed the case and set aside the sentence.

of some actual act, looking towards the accomplishment of the crime. With the crime of treason, there must be one or more overt acts proved, and proved by two or more witnesses, before the jury can return a verdict of guilty.

I believe I have pointed out to you what the Constitution provides. In the first place, you can see they recognized the importance of it when they put it in the Constitution. In the next place, you can recognize that, through the fairness of the builders of our Constitution, they throw these protections around the person who is charged with committing the offense. I have tried to point out to you in this general way what constitutes the offense of treason.

[At this point, the court read the indictment to the jury, after cautioning it that it merely stated the charges against the defendant, and did not constitute proof of them.]

I have told you in this way the provisions of the law and the charges against the defendant, Max Stephan. All the way along, you must find all these things beyond a reasonable doubt in favor of the government and against the defendant in order to constitute guilt, but I will not stop to repeat that each time.

In substance, the charge is as follows: First, that we were at war with Germany on April 18 and 19 of this year; and that at that time Max Stephan was a citizen of this country, and, as such, owed allegiance to the United States and was obligated to adhere to it. It is further charged that he did not adhere to the United States, but that he adhered to Germany; that in his heart and mind he was on the side of Germany; and that he gave aid and assistance to Germany. The charge is that the way he gave such assistance was by intentionally helping Krug, a lieutenant in the German Army who had been captured and imprisoned in Canada and who had escaped to get back to Germany so that he could continue to act as a flying lieutenant in the German Army, and also so that he could give to the enemy, namely, the German government, some worth-while information relative to the war. It is charged that these acts were all undertaken for the purpose of helping Germany, and of injuring the United States of America.

If the defendant did the things with which he is charged and committed one or more overt acts in so doing, he is guilty, provided he had the requisite intent in doing them. Now, the important intent to be considered by you is that of the defendant. The only reason the intent of the German lieutenant is involved at all here is that if Max Stephan knew what the lieutenant was planning and intending and trying to do for Germany and against the United States, and if Max Stephan intended to help him and knew he was helping him carry out that intent, then that would constitute guilty intent on the part of Stephan. The intent the law looks to is the intent of Max Stephan. The law doesn't care anything about the intent of the German lieutenant, except that if Max Stephan knew what the German lieutenant was intending to do and helped him to accomplish it, then you see the intent becomes that of Stephan. In law the only intent that is made punishable at all is the intent of the defendant. The intent of other people is no part of the crime at all.

Krug is described here as an alien enemy, because we speak of a citizen of a country with which we are at war as an enemy. However, that is not what the Constitution of the United States or the statute means by the word "enemy". That may sound confusing, but the distinction may be made clear by an illustration. We will suppose that an American citizen is married to a woman who is a citizen of Germany. We have lots of such people here in this country. She may be waiting to get citizenship in this country herself. But within the narrow definition of enemy, we would call her an enemy, because, being at war with Germany, we say every citizen of Germany is an enemy of this country. You can see the Constitutional provision on treason doesn't, and isn't intended to, apply to a case where a man, who is an American citizen and is married to an unnaturalized German woman who can therefore be called an alien enemy, gives her aid and comfort such as buying her dinner for her. It would be silly to claim, and nobody would claim, that he was guilty of treason. But, if an American citizen who owes allegiance to the United States of America intentionally transfers that allegiance to a country at war with this government, and gives that enemy country aid and

On the contrary, the Circuit Court of Appeals in a unanimous opinion, 133 F.2d 87, expressly said that this court had plainly and correctly charged the jury and defined the crime with which defendant was charged and of which he was convicted.

It is ten months (August 6, 1942) since this court imposed the sentence of death. All of this is a matter of record in this court. This court was anxious that this record should be known to anyone interested as well as to reviewing courts. An order was made that it should all be printed word for word just as it was taken down by skilled and honest court reporters. It is all in a printed volume. The record can be inspected by anyone. It contains every question asked and every answer given by the witnesses. It contains every word said to the jury by this court in explaining the law. In spite of all this, some sympathetic people who were not present at the trial, know little about the evidence to which the jury listened with such care, know nothing about the charge which this court gave to the jury in explaining the law, state to the public press and to the President, in substance, that the defendant had no purpose or intention of helping Germany win the war or the United States to lose the war, but that all he did was done because of sympathy for Lieutenant

comfort, that makes him a traitor, whether he gave such aid through a wife or through a stranger. Of course, if one were doing something such as buying food for his wife, and you were satisfied that they were lawfully married and he loved his wife, it would be hard to make you think that he was trying to help the enemy; but suppose the facts are different and you didn't find any reason why the assistance should be given except that he loved the other country better than he did his own, then the jury would take those facts and all of the facts into consideration in determining the real intent.

The element of intent is of first importance in every criminal case. I may take your overcoat by mistake and wear it home in the wintertime, but if I take it by mistake I am not guilty of larceny. If I know it isn't mine and I take it, intending to convert it to my own use, then I am guilty of larceny, even if I take it because I am cold. Intent is the meat of the crime, and it is the meat of this crime. If one knows he is a citizen of the United States and he knows the United States is at war with Germany, he is charged with knowing that he owes his loyalty to the United States and that he does not owe it to the enemy. If under those circumstances, knowing that he owes his loyalty to the United States and that he does not owe it to the enemy,—knowing that he should adhere or "stick to" his own country—and if instead of adhering to his own country he adheres to the enemy country and gives it aid and comfort, he is guilty of treason.

Of course, even if one does those things with full knowledge, he cannot be convicted, unless he commits an overt act. It is hard to think of giving aid and comfort without committing an overt act. The government must prove one of those overt acts charged in the indictment and that it was done by the defendant to carry out his treasonable intent and the overt acts must be proved by two witnesses.

The intent of the defendant Max Stephan is a vital ingredient of the crime of treason which is charged in the indictment in this case. If you are not satisfied beyond a reasonable doubt that the defendant's intent and purpose in acting as he did was evil, that is, if you are not satisfied beyond a reasonable doubt that he had the criminal intent to give aid and comfort to the enemy of the United States, the defendant must be found not guilty.

If the defendant's intent in doing what he did on the 18th and 19th days of April, 1942, was not in any way to injure this country's interest or to aid the government of Germany but merely to assist Peter Krug as an individual, the defendant must be found not guilty.

If you find beyond a reasonable doubt from the evidence that such purpose existed, of aiding the government of Germany and of injuring the United States of America, and that such was the motive of Max Stephan, and also that he performed any one of the overt acts that have been charged, and they are proved by two or more witnesses, then he is guilty of the thing the law condemns and says he must not do.

If you find from the evidence that the things done by the defendant were innocent acts in connection with Peter Krug, who it is admitted is an alien enemy of our country, that is, if you find that those acts were innocent, because the purpose and the intention of the defendant was innocent, and that he did not intend to do any wrong to our country or assist Germany in the war against United States, you must find the defendant not guilty.

Krug personally and as an individual. The statement is not supported by the record. Everyone is entitled to a free expression of his own opinion but fairness requires that the facts on which the opinion is based should be correct. Ordinarily this court would give no attention to such apparently sincere, although mistaken utterances, but this is all such a solemn and important proceeding for the cause of justice and for our country that this court feels it a duty to state what all who attended the trial or have read the record already know. It is a reflection upon the twelve jurors who returned the just verdict of guilt after this court had emphatically charged them that the defendant could not be found guilty of treason because of any assistance given to Lieutenant Krug, for the purpose of helping him merely as an individual, and that the verdict should be "not guilty" unless the purpose of the defendant was to help Germany win this war against the United States. That is plainly shown by the printed record of this case. It is because the defendant was charged with treason and because the evidence supported the findings of the jury to the effect that the defendant did the many things charged and proved for the express purpose of injuring the United States and helping Germany win the war that this court refused to grant a new trial, that the Circuit Court of Appeals unanimously affirmed both the verdict and the sentence, Stephan v. United States, 6 Cir., 133 F.2d 87, and that the Supreme Court of the United States refused to review the case on certiorari, Stephan v. United States, 63 S.Ct. 858, 87 L.Ed. ——. No one should for a minute think that the Supreme Court, the Circuit Court of Appeals or this court would permit this sentence to stand if the evidence had not fully supported the verdict of the jury and the finding that the defendant had done the things he did with the actual intent of helping Germany win the war against the United States. Nothing has happened during the past ten months to even suggest that any mistake was made by the jury or by the three federal courts which have given approval to the verdict, judgment and sentence. It is, of course, the most severe sentence that any court can impose. At the time of imposing that sentence, on August 6, 1942, this court fully believed that justice demanded that very sentence.

A full statement was made by this court at that time as to why it was felt that the death penalty should be imposed. Nothing has occurred to change the opinion of this court. During those ten months, thousands of our American boys have given their lives with the motive and purpose that the United States of America might win the war. Millions more stand ready to make the same sacrifice. The defendant spent his time, energy, money and ingenuity in an effort to have Germany win that same war. During that same ten months, millions of men and women have been working in our factories making munitions of war costing billions of dollars for the very purpose of killing the enemies of this country. The peoples of this country believe it is necessary to do that dreadful thing. We are fighting for the accomplishment of that very thing and are buying bonds to accomplish it. Those German boys in the ranks of the enemy are not our citizens and are not tainted by disloyalty to the United States, because they owe no loyalty to the United States. Our millions of soldiers and billions of munitions are striving to take the lives of those enemy soldiers. Why? Because this is war, and the most cruel war the world has ever known. We are fighting in self defense for our very lives as individuals and for our existence as a country. It must be that those who would hesitate to take the life of a traitor here on the home front who has tried to help Germany win this war are basing their conclusion on some false premise. They show by their statements that they are mistaken about the findings and verdict of the jury, which are based on substantial evidence and which verdict has been approved without one dissent by every court of our land having jurisdiction of this treason. These few mistaken persons who state that the defendant had an innocent motive just do not know the facts. No one should permit himself to be misled by such statements.

This court repeats in substance what was stated ten months ago to the effect that during this awful war the penalty for treason should be death; and that statement should be spoken loudly enough so that every disloyal citizen of our country contemplating treason will hear it, and distinctly enough so that he will understand it. There should be no trifling with traitors.